**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO: _____

AQUEDUCT CONSULTING, LLC,

        Plaintiff,

  -against-

WHSE SUPPLY INC. and SALVATORE RUSSO,

        Defendants.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Aqueduct Consulting LLC ("Plaintiff" or "Aqueduct"), by and through its counsel, as and for its Complaint against WHSE Supply Inc. ("WHSE") and Salvatore Russo ("Russo") (together with WHSE, "Defendants"), hereby alleges as follows:

**NATURE OF THE ACTION**

1. This action arises out of Defendants' unjustified and material breach of two agreements duly entered into with Aqueduct for the sale of certain COVID-19 test kits to Aqueduct, pursuant to which Aqueduct duly paid Defendants in full, but which Defendants have unjustifiably breached by failing to supply the test kits to Aqueduct or otherwise return the sums paid by Aqueduct.

2. More specifically, Defendants -- purporting to act as a broker in the sale of COVID-19 test kits to Aqueduct -- entered into two contracts with Aqueduct, pursuant to which Defendants agreed to supply 27,000 Abbot BinaxNOW Covid 19 Test Kits (the "Kits") to Aqueduct in exchange for payment of $540,000. Aqueduct paid Defendants in full, but has only received 2,000 of the 27,000 contracted-for Kits. Although Defendants have since acknowledged their breach of

the agreements and refunded Aqueduct $50,000, Defendants owe Aqueduct no less than an additional $450,000 (*i.e.*, the total amount paid by Aqueduct, less the contracted price for 2,000 Kits, less the return of $50,000).

3. Despite repeated demands, Defendants have inexcusably refused to supply the remaining Kits to Aqueduct or return the sums owed. Instead, Defendants have embarked on a campaign of lies, misrepresentations, threats, and untenable excuses for why they have not supplied the remaining Kits or returned the sums due and owing.

4. As it is now clear, Defendants have simply stolen the remaining funds from Aqueduct, which, upon information and belief, was their plan all along.

5. As a direct and proximate result of Defendants' conduct, Aqueduct has suffered, and continues to suffer, significant financial and reputational harm.

6. Accordingly, for these reasons and as further set forth herein, Defendants are liable, jointly and severally, to Aqueduct for breach of contract, unjust enrichment, fraud, fraudulent inducement, conversion, and money had and received.

**PARTIES**

7. Plaintiff is a limited liability company organized and existing under the laws of the State of Connecticut with its principal place of business located in Stamford, Connecticut. Plaintiff's sole member is an individual domiciled and residing in the State of New York.

8. WHSE is an entity organized and existing under the laws of the State of Florida with its principal place of business located at 2520 Coral Way, Coral Gables, Florida 33145. Upon information and belief, Russo is an officer, director and/or principal of WHSE. Upon further information and belief, WHSE is not a citizen of the State of Connecticut or the State of New York.

9. Russo is an individual domiciled and residing in the State of Florida. Upon information and belief, Russo is an officer, director and/or principal of WHSE.

**JURISDICTION & VENUE**

10. This Court has diversity jurisdiction under 28 U.S.C. § 1332 in that complete diversity of citizenship exists as between Plaintiff, on the one hand, and Defendants, on the other hand, and the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

11. This Court has supplemental jurisdiction over any and all state law claims alleged herein pursuant to 28 U.S.C. § 1367(a) in that such claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) in that Defendants reside in the Southern District of Florida and all Defendants are residents of the State of Florida.

13. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims asserted occurred in the Southern District of Florida. In addition to the harm caused to Plaintiff in the Southern District of Florida, Defendants have, *inter alia*, directed their activities and marketing of their services to residents in this judicial district, and otherwise engaged in purposeful and continuing business activities in this judicial district. Defendants are, at a minimum, constructively aware of their continuous and substantial commercial interactions with residents in this judicial district and, upon information and belief, have generated substantial revenue from their activities this judicial district.

## FACTUAL BACKGROUND

14. On October 22, 2021, Aqueduct entered into an agreement with Defendants for the purchase of 5,000 Kits for the price of $100,000. To memorialize the terms of the parties' agreement, the parties executed a purchase order bearing Invoice #4455, a true and correct copy of which is annexed hereto as **Exhibit 1**.

15. On October 22, 2021, Aqueduct wired to WHSE $100,000 for the purchase price of the Kits covered by Invoice #4455.

16. On October 25, 2021, Aqueduct entered into a second agreement with Defendants for the purchase of an additional 22,000 Kits for the price of $440,000. To memorialize the terms of the parties' agreement, the parties executed a purchase order bearing Invoice #90077, a true and correct copy of which is annexed hereto as **Exhibit 2**.

17. On October 26, 2021, Aqueduct wired to WHSE $440,000 for the purchase price of the Kits covered by Invoice #90077.

18. On October 26, 2021, pursuant to Aqueduct's agreement with Defendants, Aqueduct arranged for pickup of the 5,000 Kits pursuant to Invoice #4455. However, when Aqueduct's truck arrived at the warehouse in Miami, Florida where Aqueduct was to pick up the Kits, the Kits were not yet ready for pickup. As such, later that day, Aqueduct sent its truck back to the warehouse to pick up the Kits, but was only able to pick up one of two pallets, which contained 2,000 Kits. Upon information and belief, Aqueduct was only able to pick up 2,000 Kits because Defendants did not pay the end-supplier, Medical & Co. LLC, for all Kits, despite having been paid in full by Aqueduct.

19. Upon learning that Aqueduct was only able to pick up 2,000 of the 5,000 contracted-for Kits, Aqueduct called Defendants, who guaranteed that the shortage of Kits from

Invoice #4455 (*i.e.*, 3,000 Kits) would be added to Aqueduct's pickup of the 22,000 Kits covered by Invoice #90077

20. Separately, however, Defendants informed Aqueduct that 4,300 of the 22,000 Kits covered by Invoice #90077 had already been sold and Aqueduct would immediately receive a refund of $86,000 for the shortage.

21. Accordingly, on October 27, 2021, Aqueduct arranged to pick up 20,700 Kits from the warehouse in Miami, Florida (*i.e.*, 22,000 Kits less the 4,300 that were purportedly already sold, plus the missing 3,000 Kits from Invoice #4455).

22. However, when Aqueduct's truck arrived at the facility in Miami, Florida to pick up the Kits, Aqueduct was informed by Medical & Co. LLC that none of the Kits would be released to Aqueduct because the Kits were purportedly not paid for by Defendants, despite Aqueduct's payment in full to Defendants for the Kits.

23. Aqueduct immediately called Defendants to inquire why the end-supplier had not been paid despite Aqueduct's payment in full to Defendants, and Defendants instructed Aqueduct to re-schedule the pickup for the next day to give Defendants time for their wire to Medical & Co. LLC to clear. Aqueduct reasonably relied upon Defendants' representation that the funds would be remitted by Defendants to Medical & Co. LLC forthwith. This representation, however, was false, and known by Defendants to be false when made and made solely for the purpose of inducing Aqueduct's reliance.

24. Indeed, the next day, Aqueduct was informed by Medical & Co. LLC that the Kits still had not been paid for. Additionally, Medical & Co. LLC informed Aqueduct that it was completely unaware of Defendants and their role in the transaction.

25. Accordingly, it became apparent to Aqueduct that Defendants had engaged in a scheme by which it promised to act as a broker in connection with the sale of the Kits, accepted payment from Aqueduct for the Kits, but instead of tendering payment to the end-supplier, it pocketed Aqueduct's money and refused to return the sums paid or deliver any of the outstanding Kits owed.

26. In the days immediately following, Aqueduct repeatedly demanded repayment from Defendants. When presented with these demands, Defendants lied to Aqueduct, claiming that the end-supplier was refusing to release the Kits unless Aqueduct paid a higher price for the Kits. When Aqueduct refused to pay a higher price than contracted for and demanded immediate return of the sums paid less the amount for the 2,000 Kits it did receive, Defendants acknowledged breach of the agreements, returned $50,000 to Aqueduct, and promised to refund the remaining sums.

27. However, to date, Defendants have failed to return to Aqueduct the remaining $450,000 owed and have otherwise failed to make available for pick up the remaining 25,000 Kits.

28. As a direct and proximate result of Defendants' intentional misconduct, Aqueduct has suffered, and continues to suffer, significant financial and reputational injury.

## AS AND FOR A FIRST CAUSE OF ACTION
**(Breach of Contract)**

29. Plaintiff repeats and realleges each and every allegation in the paragraphs 1-28 as though fully set forth herein.

30. Aqueduct duly entered into valid and binding agreements with Defendants for the purchase of 27,000 Kits for the total purchase price of $540,000.

31. At all times, Aqueduct duly performed its obligations under the parties' agreements, including tendering payment in full for the purchase of the Kits.

32. Defendants, however, materially and unjustifiably breached their duties under the agreements resulting in significant financial and reputational harm to Aqueduct.

33. Specifically, pursuant to Invoice #4455, Defendants agreed to supply to Aqueduct 5,000 Kits for the price of $100,000. Despite receipt of full payment from Aqueduct for these Kits, Defendants only supplied 2,000 of the 5,000 Kits contracted for.

34. Additionally, pursuant to Invoice #90077, Defendants agreed to supply to Aqueduct 22,000 Kits for the price of $440,000. Despite receipt of full payment from Aqueduct for these Kits, Aqueduct has not received any of the Kits for which it contracted.

35. Defendants, admitting their breaches of the agreements, refunded $50,000 to Aqueduct, and promised to refund the remaining sums due and owing.

36. To date, however, Defendants failed to refund Aqueduct the remaining sums due and owing.

37. Accordingly, as a direct and proximate result of Defendants' breach of the agreements, Aqueduct has been injured in an amount to be determined at trial, but in no event less than $450,000.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Unjust Enrichment)**

38. Plaintiff repeats and realleges each and every allegation in paragraphs 1-28 as though fully set forth herein.

39. Based on the facts described herein, Defendants have become unjustly enriched at Plaintiff's expense.

40. Specifically, Defendants accepted $540,000 in payment from Plaintiff for the purchase of 27,000 Kits, but have only supplied 2,000 Kits and only returned $50,000 to Plaintiff. Accordingly, Defendants remain in possession of $450,000 of Plaintiff's money.

41. It would be against equity and good conscience to permit Defendants to retain the benefits that they have realized at Plaintiff's expense.

42. Accordingly, Defendants have been unjustly enriched at Plaintiff's expense in an amount to be determined at trial, but in no event less than $450,000.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Fraud)

43. Plaintiff repeats and realleges each and every allegation in paragraphs 1-28 as though fully set forth herein.

44. Defendants made multiple false statements of material fact to Aqueduct for the purpose of deceiving Aqueduct, upon which Aqueduct reasonably relied upon, resulting in significant financial and reputational injury.

45. Specifically, Defendants guaranteed Aqueduct that it would supply 27,000 Kits to Aqueduct. This representation was false and made for the purpose of deceiving Aqueduct.

46. Indeed, to this end, Defendants misrepresented to Aqueduct that it had a pre-existing relationship with the end-supplier of the Kits such that it guaranteed release of the Kits to Aqueduct upon payment. The end-supplier, however, has represented to Aqueduct that it had no prior dealings or relationship with Defendants and was unaware of their role in connection with the purchase of the Kits.

47. Defendants further misrepresented to Aqueduct that it would refund Aqueduct for the Kits it did not supply under Invoice #44455. This representation was false, known to be false when made, and was made for the purpose of inducing Aqueduct's reliance.

48. Thereafter, Defendants misrepresented to Aqueduct that the remaining Kits from Invoice #4455 would be supplied in connection with Aqueduct's pickup of the Kits covered by

Invoice #90077. Again, this representation was false and known by Defendants to be false when made.

49. Aqueduct reasonably relied upon Defendants' material misrepresentations and sustained serious economic and reputational injury as a result of such reliance, including the loss of at least $450,000.

50. Indeed, in addition to the loss of its funds, Aqueduct incurred costs in its attempted pick-up of the Kits and, significantly, due to Defendants' conduct, as described, Aqueduct was unable to redistribute the Kits that it had promised to its end-customers.

51. Accordingly, Plaintiff has been injured in an amount to be determined at trial, but in no event less than $450,000.

## AS AND FOR A FOURTH CAUSE OF ACTION
**(Fraudulent Inducement)**

52. Plaintiff repeats and realleges each and every allegation in paragraphs 1-28 as though fully set forth herein.

53. In order to induce Aqueduct to transfer $540,000 to WHSE and Russo, Defendants misrepresented material facts to Aqueduct, including that Defendants had a pre-existing relationship with the end-supplier of the Kits such that it could guarantee release of the Kits to Aqueduct upon payment.

54. Defendants knew their misrepresentations of material fact were false when made, and were made with the intention of inducing Aqueduct to rely on such misrepresentations.

55. Aqueduct reasonably relied upon Defendants' misrepresentations, which caused significant financial and reputational injury to Aqueduct, including the loss of $450,000.

56. Accordingly, Plaintiff has been injured in an amount to be determined at trial, but in no event less than $450,000.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Conversion)

57. Plaintiff repeats and realleges each and every allegation in paragraphs 1-28 as though fully set forth herein.

58. Defendants have, without authority, assumed and exercised dominion and control over Aqueduct's specific property, namely its funds totaling $450,000.

59. Defendants' unauthorized assumption and exercise of dominion and control over Aqueduct's property was done intentionally to interfere with Plaintiff's ownership of such property and to the exclusion of Plaintiff's rights.

60. Accordingly, Plaintiff has been injured in an amount to be determined at trial, but in no event less than $450,000.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Money Had And Received)

61. Plaintiff repeats and realleges each and every allegation in paragraphs 1-28 as though fully set forth herein.

62. Defendants received money from Plaintiff belonging to Plaintiff.

63. Defendants benefited from the receipt of the money from Plaintiff.

64. Despite due demand, Defendants have refused to return the sums due and owing to Plaintiff and which rightfully belong to Plaintiff.

65. It would be against equity and good conscience to permit Defendants to retain the money rightfully belonging to Plaintiff.

66. Accordingly, Plaintiff has been injured in an amount to be determined at trial, but in no event less than $450,000.

**WHEREFORE**, Plaintiffs respectfully request that judgment be entered against Defendants as follows:

a. On the First Cause of Action, awarding Plaintiff damages in an amount to be determined at trial, but in no event less than $450,000;

b. On the Second Cause of Action, awarding Plaintiff damages in an amount to be determined at trial, but in no event less than $450,000;

c. On the Third Cause of Action, awarding Plaintiff damages in an amount to be determined at trial, but in no event less than $450,000;

d. On the Fourth Cause of Action, awarding Plaintiff damages in an amount to be determined at trial, but in no event less than $450,000;

e. On the Fifth Cause of Action, awarding Plaintiff damages in an amount to be determined at trial, but in no event less than $450,000;

f. On the Sixth Cause of Action, awarding Plaintiff damages in an amount to be determined at trial, but in no event less than $450,000;

g. Awarding Plaintiff punitive damages, pre-judgment and post-judgment interest, attorneys' fees, costs, expenses, and disbursements; and

h. Awarding Plaintiff such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: West Palm Beach, FL
       November 9, 2021

McLAUGHLIN & STERN PLLC

By: _____/s/ Neil B. Solomon_____
       Neil B. Solomon, Esq.

525 Okeechobee Blvd., Suite 1700
West Palm Beach, FL 33401
Tel.: (561) 659-4020
nsolomon@mclaughlinstern.com

McLAUGHLIN & STERN, LLP
Jason S. Giaimo, Esq.*

260 Madison Avenue
New York, NY 10016
Tel.: (212) 448-1100
jgiaimo@mclaughlinstern.com
* *Pro Hac Vice* Admission Anticipated

*Attorneys for Plaintiff Aqueduct Consulting LLC*